IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN J. SHEEHAN and MARGARET SHEEHAN, | ) ) ) | CIV. NO. 10-00695 SOM/LEK |
| Plaintiffs, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS |
| vs. | ) ) | |
| CENTEX HOMES, a Nevada general partnership, CENTEX REAL ESTATE CORPORATION, a Nevada corporation, NOMAS CORPORATION, a Nevada corporation, JOHN DOES 1-50, JANE DOES 1-50, DOES AFFILIATES 1-50, DOES ENTITIES 1-50, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

ORDER GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND TO DIMISS

I.      INTRODUCTION.

        On November 23, 2010, Plaintiffs John J. Sheehan and

Margaret Sheehan filed a Complaint asserting a violation of

Hawaii Revised Statutes § 514B-94 and common law fraud.  The

Sheehans allege that Defendant Centex Homes fraudulently induced

Margaret Sheehan to enter into a sales contract to purchase a

condominium unit.  The sales contract, executed by the parties in

July 2006, included a seven-page alternative dispute resolution

section.  The parties disagree on whether the Sheehans' claims

must be arbitrated.  Centex Homes seeks arbitration pursuant to

the sales contract, while the Sheehans argue that the arbitration

provision is unenforceable or inapplicable to this dispute.  The
Sheehans sue to rescind the sales contract and for alternative
relief.  On December 23, 2010, Centex Homes filed a motion to
stay or dismiss the Complaint and to compel mediation/arbitration
pursuant to the arbitration provision in the sales agreement.

The court concludes that this matter is subject to
arbitration, as the arbitration provision is valid and
encompasses the Sheehans' claims.  Accordingly, the court grants
Centex Homes' motion to compel arbitration and to dismiss this
action.

II.      FACTUAL BACKGROUND.

On July 14, 2006, Margaret Sheehan entered into a sales
contract with Centex Homes ("Centex") to purchase a two-bedroom
condominium unit in the Beach Villas development at Ko Olina on
the island of Oahu.  See Compl. ¶ 11, ECF No. 1.  On October 10,
2007, Margaret Sheehan amended the sales contract to instead
purchase a three-bedroom condominium unit (Unit O-302) in the
Beach Villas.  See Compl. ¶ 12.  On March 6, 2008, the
transaction in the amended sales contract closed.  See Compl.
¶ 13.  Margaret Sheehan delivered $1,268,000 to Centex for Unit
O-302 and took possession of the unit.  See Compl. ¶¶ 13-14.

The Sheehans[1] allege that Margaret Sheehan signed the

---

[1] Although only Margaret Sheehan signed the sales contract,
her spouse, John Sheehan, also claims damages in this action.

2

sales contract and purchased Unit O-302 based on Centex's sales representation and materials that the following nine amenities would be part of the Beach Villas:  Entry Lobby, Fitness Center, Pool, Members Area, Koi Path, Lap Pool, Koi Bridge, Beach Bar, and Porte Cochere (collectively, the "Amenities").  See Compl. ¶¶ 15-16.  The Sheehans claim that the Amenities were a major attraction and material reason for their purchase of Unit O-302.  See Compl. ¶¶ 20-21.  Centex's authorized sales agents allegedly represented that the Beach Villas Association of Apartment Owners ("Beach Villas AOAO") would control the Amenities after Centex sold all of the Beach Villas units.  See Compl. ¶ 19.  The Sheehans allege, however, that before Margaret Sheehan signed the sales contract and took possession of Unit O-302, Centex knew that the Amenities would not be part of the Beach Villas or transferred to the Beach Villas AOAO.  See Compl. ¶¶ 22, 28.

On September 1, 2005, before Margaret Sheehan and Centex agreed to the sales contract, Centex had allegedly entered into a "Right of First Refusal; Purchase Option; Agreement to Lease" ("Option") with Ko Olina Development, LLC ("KOD"), for the sale of the Amenities.  See Compl. ¶ 23.  On September 12, 2008, the Option was allegedly amended to provide that Centex would transfer the Amenities to KOD for the purchase price of $1.00.  See Compl. ¶ 26.  Centex allegedly colluded with KOD to hide information about the Option from the Sheehans and other

prospective buyers until Centex sold all the Beach Villas units and left the property.  See Compl. ¶ 32.  The Sheehans claim that Margaret Sheehan would not have purchased Unit O-302 had Centex told them that the Beach Villas AOAO would not own the Amenities. See Compl. ¶ 34.

The sales contract contains a section with the title "Alternative Dispute Resolution Notification and Procedures; Waivers" ("ADR provision"), which is at issue in the present case.  See ECF No. 7, Ex. A ("Sales Contract") at 24-30.  The ADR provision runs from page 24 to page 30 of the sales contract, and Margaret Sheehan initialed each of those pages.  On page 30, both Margaret Sheehan, as the purchaser, and Centex Homes, as the seller, signed the ADR provision.  The ADR provision states that its purpose is to provide the parties "with a mechanism to resolve disputes that may develop in the future concerning the subject matter of this sales contract."  Sales Contract § 37. Furthermore, the ADR provision states that:

> [its] procedures shall be the exclusive
> method to resolve all disputes and that the
> goal of the parties in agreeing to these
> procedures is to ensure that all disputes are
> resolved in the most expeditious and
> inexpensive manner possible.  All provisions
> of these procedures are to be interpreted
> with this purpose in mind.

See id.  The ADR provision covers any disputes that "arise out of" (1) "the project"; (2) the "sales contract or other documents relating to the condominium"; (3) "any other agreements between

4

the parties"; (4) "the sale of a[n] apartment"; (5) "the use or condition of any improvement"; and (6) "the design or construction of any improvement; or any condition on or affecting the project"; as well as (7) "disputes which allege the breach of implied or express warranties as to the condition of any improvement or the project." Sales Contract § 37(a).

On November 23, 2010, the Sheehans filed their Complaint asserting two claims. In Count I, the Sheehans allege a violation of Hawaii Revised Statutes § 514B-94. See Compl. ¶¶ 35-43. Hawaii Revised Statutes § 514B-94 makes it illegal to publish any false statement concerning any project for sale, or to issue any marketing material that contains a false statement or is misleading due to the omission of a material fact. Haw. Rev. Stat. § 514B-94(a)(2). In Count II, the Sheehans assert a common law fraud claim and allege that Centex fraudulently induced them to enter into the sales contract as a whole. See Compl. ¶¶ 44-49. The other two named Defendants in the Complaint are Centex Real Estate Corporation ("CREC") and Nomas Corporation ("Nomas"). CREC and Nomas, both Nevada corporations are Centex Homes' partners. See Compl. ¶¶ 4-5. The present motion is brought by all three Defendants, who are collectively referred to in this order as "Centex."

On December 23, 2010, Centex filed a "Motion to Stay or Dismiss Plaintiffs' Complaint and to Compel Mediation/Arbitration

and for Attorneys' Fees and Costs." <u>See</u> "Mot.", ECF No. 7. The
Sheehans filed an Opposition on February 14, 2011, <u>see</u> ECF No.
15, and Centex filed a Reply on February 18, 2011, <u>see</u> ECF No.
18.[2]

III.    <u>LEGAL STANDARD.</u>

The Federal Arbitration Act ("FAA") provides that any
arbitration agreement within its scope "shall be valid,
irrevocable, and enforceable," 9 U.S.C. § 2, and permits a party
"aggrieved by the alleged refusal of another to arbitrate" to
petition a district court for an order compelling arbitration in
the manner provided for in the agreement. 9 U.S.C. § 4. The FAA
"leaves no place for the exercise of discretion by a district
court, but instead mandates that district courts **shall** direct the
parties to proceed to arbitration on issues as to which an
arbitration agreement has been signed." <u>Chiron Corp. v. Ortho
Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000)
(emphasis in original).

"The court's role under the Act is therefore limited to
determining (1) whether a valid agreement to arbitrate exists
and, if it does, (2) whether the agreement encompasses the

---

[2] Although the Sheehans have included a table of authorities
in the Opposition, they fail to submit a table of contents as
required under Local Rule 7.5(f). Centex also omitted a table of
contents in the Reply. Pursuant to Local Rule 7.5(f), all briefs
and memoranda exceeding fifteen (15) pages must have a table of
contents. <u>See</u> Local Rule 7.5(f).

dispute at issue." Id.; see also Cox v. Ocean View Hotel Corp.,
533 F.3d 1114, 1119 (9th Cir. 2008). "If the response is
affirmative on both counts, then the Act requires the court to
enforce the arbitration agreement in accordance with its terms."
Chiron Corp., 207 F.3d at 1130. See also Hawaii Med. Ass'n v.
Hawaii Med. Serv. Ass'n, Inc., 113 Haw. 77, 91, 148 P.3d 1179,
1193 (2006) (citation and quotation marks omitted).

A court must, on application of one of the parties,
stay the trial of an action if any issue involved in the suit is
referable to arbitration. See 9 U.S.C. § 3. That requirement,
however, applies only to "the suit" insofar as it involves
arbitrable issues. See Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp., 460 U.S. 1, 21 n.23 (1983); see also Amegy Bank
Nat'l Ass'n v. MISS CONY, Civ. No. 06-00405 SOM/KSC, 2006 WL
2793172, at *2 (D. Haw. Sept. 27, 2006).

IV.      ANALYSIS.

         A.       A Valid Agreement to Arbitrate Exists and Is
                  Enforceable.

The Sheehans argue that the arbitration provision is
unenforceable because it is unlawful and contrary to public
policy. See Opp'n at 6. This court disagrees.

                  1.       The Arbitration Provision is
                           Lawful.

The Sheehans allege that the arbitration provision is
unlawful because it does not require an award of statutory

7

attorneys' fees. They claim that the arbitration provision alters a prevailing purchaser's statutory right to attorneys' fees and costs and gives the arbitrator unfettered discretion to decline to make any such award. The Sheehans argue that this unrestrained discretion over the award of fees violates Hawaii Revised Statutes § 514B-94b. The court is not persuaded.

The arbitration provision reads:

> All proper costs and expenses of an arbitration, including **without limitation**, witnesses' fees, attorneys' fees and the fees of the arbitrator, **shall** be charged to a party or parties in such amounts as the arbitrator decides at the time of the awards.

Sales Contract § 37(f)(8) (emphasis added). The arbitration provision not only allows the arbitrator to award attorneys' fees and costs to the prevailing party, it states that an award of the proper costs and expenses of arbitration is mandatory. The words "without limitation" give the arbitrator the power to award matters other than those enumerated, presumably even if such sums were not awardable by a court. See Kona Vill. Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, 123 Haw. 476, 477, 236 P.3d 456, 457 (2010) (finding enforceable an arbitration agreement in which the parties agreed to give the arbitrator power to award attorneys' fees in excess of what would have been permitted by statute).

Furthermore, the arbitration provision provides that the arbitrator shall apply Hawaii's Uniform Arbitration Act.

See Sales Contract § 37(f) ("binding arbitration pursuant to []
the provisions of Chapter 658A of Hawaii Revised Statutes").
Under section 658A-21 of Hawaii Revised Statutes, "an arbitrator
may award reasonable attorney's fees and other reasonable
expenses of arbitration if such an award is authorized by law in
a civil action involving the same claim or by the agreement of
the parties to the arbitration proceeding."  Haw. Rev. Stat.
§ 658A-21.  While the statute is permissive, the arbitration
provision makes a fee and cost award mandatory.  That is, the
arbitration provision ensures that the prevailing party will
receive attorneys' fees and costs in an amount determined by the
arbitrator; it does not "eliminate" a statutory right to
attorneys' fees.

        The Hawaii Supreme Court has recognized: "(1) the
freedom and autonomy of parties to enter into an agreement for
arbitration; (2) their right to provide the scope of the
arbitrators' authority within such agreements; and (3) the broad
discretion afforded to, and the limited judicial review of, the
arbitrator rendering awards."  Kona Vill. Realty, 123 Haw. at
477, 236 P.3d at 457.  Arbitrators generally have broad
discretion in their awards, and parties assume the risk of such
discretion when they agree to submit disputes to arbitration.
See id.  In this case, the arbitration provision is lawful.

2.	The Arbitration Provision is Not
	Contrary to Public Policy.

The Sheehans rely on the same argument that the arbitration provision eliminates attorneys' fees or otherwise limits statutory rights in asserting that it violates public policy.  The Supreme Court and the Ninth Circuit, however, have recognized the strong public policy favoring arbitration.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 619 n.3, 105 S. Ct. 3346, 3350 (1985); Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 726 (9th Cir. 2007).  Hawaii also has long recognized the strong public policy supporting its arbitration statutes as codified in chapter 658A of the Hawaii Revised Statutes.  The Hawaii Supreme Court has recognized the "proclaimed public policy" of encouraging arbitration "as a means of settling differences and thereby avoiding litigation."  Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Haw. 251, 272, 151 P.3d 732, 753 (2007).  Given this strong public policy, the Sheehans, to be persuasive on this subject, must show that their public policy argument is stronger than the public policy favoring arbitration.  See Balen v. Holland Am. Line Inc., 583 F.3d 647, 654 (9th Cir. 2009).  The Sheehans fail to meet this burden.

The Sheehans argue that it is against public policy for an arbitration provision to include a fees and costs provision that gives an arbitrator unfettered discretion to allocate the

entire cost of arbitration and an opponent's fees to a losing purchaser who brings a claim under section 514B-94(b).  See Opp'n at 10.  The Sheehans claim that the forfeiture of such important statutorily mandated rights or benefits is against public policy. As this court notes above, the arbitration provision does not eliminate the Sheehans' rights to attorneys' fees.  Rather, the arbitration provision states that the prevailing party shall receive the fees to which the arbitrator determines it is entitled.  See Sales Contract § 37(f)(8).  Thus, the Sheehans' public policy claim is unavailing.

The Sheehans rely on Graham Oil Company v. ARCO Products Company, 43 F.3d 1244 (9th Cir. 1994), for the proposition that an arbitration clause that gives an arbitrator unfettered discretion is against public policy.  See Opp'n at 10. In Graham, the arbitration clause was held unconscionable because it expressly forfeited the franchisee's statutorily mandated rights to (1) a one-year statute of limitations on its claims against the franchisor and (2) recovery of exemplary damages and reasonable attorneys' fees.  Id. at 1247-48.  The arbitration clause in Graham provided that each party would bear its own attorneys' fees, and thus forfeited the plaintiff's right to recover attorneys' fees from the defendant if the plaintiff prevailed on certain claims.  Id. at 1247.  In the present case, the arbitration provision does not forfeit any statutorily

mandated rights and does not require a fee-splitting arrangement. According to the arbitration provision in issue here, the prevailing party will receive the amounts determined by the arbitrator. Of course, if the case were litigated in court, a judge would determine what amounts were reasonable, and no party would be guaranteed a particular sum. At least with respect to fees, the arbitrator does not have greater discretion in setting an award.

The Sheehans also cite to two Ninth Circuit cases criticizing arbitration clauses that imposed financial barriers to the enforcement of statutory claims. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1178 (9th Cir. 2003); Ting v. AT&T, 319 F.3d 1126, 1151 (9th Cir. 2003). These cases are distinguishable, as they involved class arbitration waivers and unconscionable cost-splitting fee requirements, neither of which is analogous to or present in the instant case.

### 3.    The Arbitration Provision Is Severable.

Even if, as the Sheehans allege, the sales contract is voidable because of fraud, the arbitration provision remains valid and enforceable because it is severable from the contract as a whole. The Sheehans' Complaint does not allege any fraudulent inducement specifically related to the embedded ADR provision or any arbitration or mediation clause. Rather, Count II asserts fraudulent inducement to the sales contract as a

whole.  Such allegations of fraudulent inducement as to an entire
contract are usually insufficient to defeat the applicability of
an arbitration clause.  See <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 130
S. Ct. 2772, 2778 (2010); <u>Bridge Fund Capital Corp. v. Fastbucks
Franchise Corp.</u>, 622 F.3d 996, 1000 (9th Cir. 2010).  <u>See also</u>
<u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 445-46
(2006) ("[A]s a matter of substantive federal arbitration law, an
arbitration provision is severable from the remainder of the
contract. [U]nless the challenge is to the arbitration clause
itself, the issue of the contract's validity is considered by the
arbitrator in the first instance.").  Only allegations of fraud
that go specifically to the execution of an arbitration clause
may be considered by a court.  The Sheehans fail to make such
allegations.  Accordingly, the fraud claims can proceed to
arbitration.

        The facts of the present case are similar to those in
<u>Lee v. Heftel</u>, 81 Haw. 1, 911 P.2d 721 (1996).  In <u>Lee</u>, the
Hawaii Supreme Court held that the arbitration clause in a real
estate contract was valid and enforceable because the purchaser
had not alleged that he had been fraudulently induced to enter
into the arbitration clause.  <u>Lee</u>, 81 Haw. at 4, 911 P.2d at 724.
The purchaser's general allegations were based on fraud in the
inducement of the contract as a whole, rather than fraud in the
inducement of the arbitration clause.  "[N]otwithstanding a

contrary state rule, consideration of a claim of fraud in the inducement of a contract is for the arbitrators and not the courts." Id. (quotations omitted); see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967).

Furthermore, the arbitration provision before this court, which appears entirely in bold, capitalized text, bears signatures separate from the signatures to the entire sales contract. Margaret Sheehan initialed the bottom right-hand corner of every page of the ADR section. In addition, both Margaret Sheehan and Centex signed the end of the ADR section on page 30.

In Brown v. KFC National Management Company, 82 Haw. 226, 246, 921 P.2d 146, 166 (1996), the Hawaii Supreme Court found that an arbitration agreement was severable from an employment application form for several reasons. The arbitration agreement was contained in a discrete section of the application, which was specifically denominated "Agreement." See 82 Haw. at 245, 921 P.2d at 165. The Agreement section was boxed off from other sections of the application, and the arbitration portion was also set off from preceding paragraphs with its own subheading of "Arbitration of Employee Rights." Id. Furthermore, a signature line appeared just below the Agreement. Id. Cf. Arrendondo v. 24 Hour Fitness USA Inc., Civ. No. 07-00232 DAE/BMK, 2007 WL 2363386, *1 (D. Haw. Aug. 13, 2007)

14

(finding arbitration clause not severable because it was not contained in a separate portion of the form, not boxed off, and not set off with a subheading).

In this case, the ADR section was contained in a discrete section of the sales contract and bore the title "Alternative Dispute Resolution Notification and Procedures; Waivers." The arbitration and mediation clauses were set off with their own subheadings, and each page of the ADR section was signed by Margaret Sheehan. Under the circumstances, this court views the arbitration provision as severable from the sales contract and enforceable even in the event the sales contract was fraudulently induced.

<blockquote>
B.  The Arbitration Provision Encompasses the <u>Dispute at Issue.</u>
</blockquote>

Having concluded that a valid agreement to arbitrate exists, the court turns to the issue of whether the arbitration provision encompasses the dispute at issue. The court determines that it does.

<blockquote>
1.  The Scope of the Arbitration <u>Provision Is Broad.</u>
</blockquote>

Examining the ADR clause and sales contract as a whole, the court views the scope of the arbitration provision as broad.

"The scope of arbitration proceedings pursuant to the FAA is defined by the parties['] agreement to arbitrate." <u>Wailua Assocs. v. Aetna Cas. & Sur. Co.</u>, 904 F. Supp. 1142, 1149 (D.

15

Haw. 1995); see also Schoenduve Corp. v. Lucent Techs. Inc., 442 F.3d 727, 732 (9th Cir. 2006) ("The scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement.") (citation omitted).

The Sheehans focus only on the language **"arise out of** the sales contract" in section 37(a) of the sales contract to support their position that the arbitration provision should be narrowly construed. An arbitration clause using only "arising out of" language without additional "or relating to" language is typically interpreted narrowly. See Tracer Research Corp. v. Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1294-95 (9th Cir. 1994) (applying federal law to determine the scope of the arbitration); Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 807 (N.D. Cal. 2004). It has been said that an arbitration clause that applies to disputes "arising out of" an agreement covers "only those [disputes] relating to the interpretation and performance of the contract itself." See Tracer, 42 F.3d at 1295; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. at 398.

The Sheehans rely on Tracer in arguing that the arbitration provision at hand is narrow in scope. In Tracer, the arbitration clause stated, "In the event any controversy or claim **arising out of this Agreement** cannot be settled by the parties [], such controversy or claim shall be settled by arbitration."

16

Tracer, 42 F.3d at 1295 (emphasis added). The court in Tracer concluded that the defendants' misappropriation claim was an independent wrong separate from any claim in the agreement, and therefore not arbitrable. Id.

The Sheehans also rely on Mediterranean Enterprises, Inc. v. Ssangyong Corporation, 708 F.2d 1458 (9th Cir. 1983). The arbitration clause in that case read, "Any disputes **arising hereunder** or following the formation of joint venture shall be settled through binding arbitration pursuant to the Korean-U.S. Arbitration Agreement." Id. at 1461 (emphasis added). The Mediterranean court held that the plaintiff's claim for conversion raised issues distinct from the interpretation and performance of the agreement. Id. at 1465.

The arbitration provision in the present case is broader than the provisions in Tracer and Mediterranean. Although the words "arise out of" in the present arbitration provision do not provide the broadest possible scope, they are not as narrow as the Sheehans contend when the ADR section as a whole is considered. Several other portions of the ADR section shed light on this issue. The stated purpose of the ADR section is to provide the parties with "a mechanism to resolve disputes that may develop in the future **concerning the subject matter** of this sales contract." Sales Contract § 37 (emphasis added). See Chloe Z Fishing Co. v. Odyssey Re (London) Ltd., 109 F. Supp. 2d

1236, 1254 (S.D. Cal. 2000) (giving broad meaning to the phrase "concerning any claim under the Policy."). In contrast, the arbitration clause in <u>Tracer</u> covered only "any controversy or claim arising out of this Agreement." <u>Tracer</u>, 42 F.3d at 1295. Moreover, the sales contract states that the ADR procedures "shall be the **exclusive method** to resolve all disputes." Sales Contract § 37 (emphasis added). The dispute resolution procedures in the arbitration provision are recognized as a "material inducement" for the parties to enter into the sales contract. <u>See</u> <u>id.</u> § 37(b). The Sheehans also waived their rights to a jury trial on any claim or cause of action "based upon or arising out of" any "dispute" or "prohibited litigation." <u>Id.</u> Taken together, these terms demonstrate that the parties did not intend the unduly narrow scope that the Sheehans urge.

The Sheehans also urge the court to follow <u>Cape Flattery Limited v. Titan Maritime LLC</u>, 607 F. Supp. 2d 1179 (D. Haw. 2009) (Seabright, J.), a case currently on appeal. In <u>Cape Flattery</u>, Judge Seabright held that the arbitration provision applicable to any dispute "arising under this Agreement" was narrow and covered only those disputes relating to the interpretation and performance of the Agreement itself. <u>Cape Flattery</u> is distinguishable from the present case in two ways. First, the arbitration clause in <u>Cape Flattery</u> stated simply, "Any dispute arising under this Agreement shall be settled by

arbitration in London, England, in accordance with the English Arbitration Act 1996 and any amendments thereto, English law and practice to apply." Id. at 1181. The clause did not include any list of categories of arbitrable disputes such as the Sheehans' arbitration provision does. The only language before the court in Cape Flattery was the "arising under this Agreement" language, making the Mediterranean decision interpreting the phrase "arising hereunder" more closely analogous than the phrase is to the present case. Id. at 1186. Second, the arbitration clause in Cape Flattery was governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which requires a four-step process to determine arbitrability.[3] In the present case, the arbitration provision is governed by the two-step FAA inquiry. The court, therefore, is not persuaded that it should adopt the Cape Flattery analysis here.

---

[3] Courts determining arbitrability under the Convention ask four questions: (i) Is there an agreement in writing to arbitrate the subject of the dispute? See Convention, Article II §§ 1-2; (ii) Does the agreement provide for arbitration in the territory of a signatory of the Convention? See Convention, Article I §§ 1 & 3; 9 U.S.C. § 206; (iii) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial? See Convention, Article I § 3; 9 U.S.C. § 202; (iv) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? See 9 U.S.C. § 202.

Once a court decides that an arbitration clause should be interpreted broadly, the factual allegations in the Complaint "need only 'touch matters' covered by the contract containing the arbitration clause." <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 721 (9th Cir. 1999) (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 624 n.13 (1985)).

The Sheehans allege that their claims do not "arise out of" the sales contract because the alleged fraud occurred before the parties entered into the sales contract. The section 514B-94 claim and the common law fraud claim are both based on allegedly false statements made by Centex before the Sheehans signed the sales contract. <u>See</u> Opp'n at 17-19. The Sheehans argue that their section 514B-94(b) claim only requires that Centex take back the apartment, in writing, without performing under the sales contract. <u>See</u> Opp'n at 17. Their fraud claims seek rescission of the sales contract "without any need to read it." <u>Id.</u> Thus, they argue, the dispute is related "only peripherally" to the sales contract and raises issues "largely distinct from" the interpretation and performance of the sales contract. Opp'n at 18. This court disagrees.

While in <u>Tracer</u> a misappropriation of trade secrets claim was not predicated on any breach of the licensing agreement

between the parties, the gravamen of the Sheehans' fraud claims is Centex's allegedly improper dealings and failure to perform satisfactorily under the sales contract. The Sheehans cannot argue that their claims are based on misconduct outside and independent of the sales contract. In the Complaint, the Sheehans allege that Centex "fraudulently induced [them] to enter into a sales contract." Compl. ¶ 1. In the Opposition, the Sheehans state that they sue Centex for false statements "made by defendant Centex Homes concerning a condominium project" and "amenities related to the sale of the apartment to the plaintiffs." Opp'n at 2, ¶¶ 1, 2. The Sheehans' alleged damages would not exist without the sales contract. Moreover, the relief the Sheehans seek is an order voiding and nullifying the sales contract, along with repayment of the full purchase price of the unit plus interest. See Compl. at 10, ¶ 2(c). Any fraud is not independent of the contract.

In addition, the factual allegations in the Sheehans' claims arise out of matters covered by the arbitration provision. See id. Unlike the provisions in the authorities the Sheehans rely on, the arbitration provision in issue in the present case is not limited to disputes that "arise out of" a particular contract document. Instead, the provision covers any disputes that "arise out of" (1) "the project"; (2) the "sales contract or other documents relating to the condominium"; (3) "any other

21

agreements between the parties"; (4) "the sale of a[n] apartment"; (5) "the use or condition of any improvement"; and (6) "the design or construction of any improvement; or any condition on or affecting the project"; as well as (7) "disputes which allege the breach of implied or express warranties as to the condition of any improvement or the project." Sales Contract § 37(a).

The Sheehans' claims fall directly into several of these categories. The first category covers disputes arising out of "the project." Clearly, without the project, the Sheehans would have no claim. The Sheehans view the reference to "the project" as somehow confined to construction issues. Nothing in the sales documents or common usage of language suggests such a limitation, and the Sheehans must read words into that category to make this argument.

Other categories cover disputes arising out of the "sales contract," "any other agreements" and the "sale of a[n] apartment." Sales Contract § 37(a). The Complaint reads, "Centex has defrauded the Sheehans concerning the sale of Unit O-302 under the Sales Contract." Compl. ¶ 48. The Sheehans allege that Centex and its directors, officers, and agents violated section 514B-94(b) when they personally participated or aided in "making the sale of Unit O-302" and that the Sheehans "relied on Centex's misrepresentation . . . when [they] entered into the

sales contract to purchase Unit O-302." Compl. ¶¶ 43, 47. Even
if the claims could not be said to arise out of a specific
document constituting the "sales contract," they certainly arise
out of "other agreements" or the "sale of a[n] apartment."

Additionally, the Sheehans' Complaint alleges that
Centex's sales and marketing materials led them to believe the
Amenities would be part of the condominium. See Compl. ¶¶ 16,
22. The authorized sales brochure showed pictures of the
"promised" Amenities. See Compl. ¶¶ 17, 37. Disputes arising
out of these materials fall under the category in section 37(a)
of the sales contract referring to disputes arising out of "other
documents relating to the condominium." The Sheehans' claims
easily fall within the scope of several categories in the
arbitration provision.

At the hearing, the Sheehans argued that there was no
causal connection between their claims and the sale of the
apartment. The Sheehans argued that their claims could not have
arisen out of the project because Centex's alleged
misrepresentation about the Amenities occurred before the
contract was even signed. See Opp'n at 24. The Sheehans,
however, pointed to no authority for the proposition that
something occurring before the parties enter into a contract
cannot arise out of "the project" or out of "the sale of a[n]
apartment" that is the subject of the contract.

The Ninth Circuit rejected an argument similar to the Sheehans' causation argument in _Simula, Inc. v. Autoliv, Inc._, 175 F.3d 716 (9th Cir. 1999). The _Simula_ court was unpersuaded by the argument that the plaintiffs' tort claims were not arbitrable because they related to conduct occurring prior to the date on which the parties entered into the arbitration clause. _Id._ at 723. The alleged misrepresentation in _Simula_, which was directly tied to the defendant's status under the agreement, was held to be arbitrable. _Id._ at 724.

### C. Centex's Request for Fees is Denied Without Prejudice.

With respect to Centex's motion for attorneys' fees, the court, without ruling on the availability or amount of fees, directs Centex to comply with Local Rule 54.3 in a separate motion for attorneys' fees if it continues its fee request.

## V. CONCLUSION.

For the foregoing reasons, the court grants Centex's motion to compel arbitration. As no issues remain for adjudication by this court, the action is dismissed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii March 21, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Sheehan et al. v. Centex Homes et al., Civ. No. 10-00695 SOM/LEK; ORDER
GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS.